UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,            )
                                   )
            Plaintiff,             )
                                   )
    v.                             )   Cause No. 3:16-CV-050 JD
                                   )
STG. MILLER, *et al.*,             )
                                   )
            Defendants.            )

OPINION AND ORDER

Christopher L. Scruggs, a *pro se* prisoner, has filed a complaint under 42 U.S.C. § 1983, along with two motions for preliminary injunction, complaining that officers at the Westville Control Unit have pepper sprayed him and have been harassing him to get revenge for his throwing water on a fellow officer. (DE 2, 3, 4.)

I.   Screening Pursuant to 28 U.S.C. § 1915A

The court must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b). Courts apply the same standard under Section 1915A as when deciding a motion under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 603.

In determining whether the complaint states a claim, the court must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Scruggs is presently an inmate at the Westville Control Unit ("WCU"), the segregation unit of a maximum security correctional facility.[1] According to the complaint and motions for preliminary injunction, on November 22, 2015, Scruggs threw water onto C.O. Sternberg as she passed by his cell. C.O. Sternberg then called Stg. Miller and Stg. SinClair for assistance. When Miller and SinClair arrived, Sternberg told them that the substance Scruggs threw on her burned. Miller and SinClair told Scruggs that he "was a nigger and that [he] would see what niggers get, and that [Scruggs] fucked up by putting whatever on a 'white woman.'" (DE 2 at 3.) Scruggs then got into a verbal altercation with both Miller and SinClair. Miller and SinClair left but returned the next day for a cell extraction. Though Scruggs agreed to "cuff up" voluntarily, Miller and SinClair, under the orders of Lt. Creasy, nevertheless pepper sprayed him twice to get revenge for his throwing water on Sternberg a day earlier. (DE 3 at 3.) Subsequently, Miller and SinClair again pepper sprayed Scruggs for having on a T-shirt and when he was on his way to

---

[1] This court has recognized WCU as a "supermax" facility. *See Littler v. Ind. Dep't of Corr.,* No. 3:11-CV-218, 2013 WL 587901 (N.D. Ind. order dated Feb. 12, 2013); *Smith v. Wilson,* No. 3:07-CV-338, 2007 WL 2903197 (N.D. Ind. order dated Oct. 1, 2007). "Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson v. Austin*. 545 U.S. 209, 213 (2005).

sleep. This, too, was done out of revenge.

First, Scruggs alleges that Miller and SinClair used excessive force against him three times in violation of the Eighth Amendment by using pepper spray unnecessarily. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id*. The use of pepper spray on its own does not violate the Constitution. *Soto v. Dickey*, 744 F.3d 1260, 1270 (7th Cir. 1984). However, when prison officials use it for the sole purpose of punishment or to inflict pain, Constitutional liability attaches. *Id.*

Here, while light on detail, the complaint can be read to allege that Miller and SinClair pepper sprayed Scruggs on three occasions to maliciously or sadistically to cause him harm. Giving him the inferences to which he is entitled at this stage, he has alleged enough to proceed further against both of them. And because their supervisor, Creasy, approved of and ordered their conduct, Scruggs has stated a claim against Creasy, too. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations and internal quotation marks omitted). Further factual development may show these officers acted reasonably under the circumstances, but Scruggs has alleged enough at this stage.

After Scruggs was pepper sprayed on November 23, 2015, he told Creasy that he needed medical attention because he spit up blood. Scruggs also told Nurse Cook that his nose was

bleeding from the pepper spray, but she didn't see any blood. Neither Creasy nor Nurse Cook provided Scruggs with any medical treatment. Scruggs alleges that Creasy and Nurse Cook denied him proper medical care under the Eighth Amendment.

Inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "Conduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be liable under the Eighth Amendment for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Scruggs' claim fails on both fronts. To start, there is nothing to indicate that Scruggs had an objectively serious medical need. At most, he suffered from a simple bloody nose. As pled, it is implausible to conclude that this is a serious medical need requiring medical attention. *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (holding that minor scrapes

and bruises do not amount to serious medical needs); *Harmon v. Jordan*, No. 12-CV-21, 2014 WL 4472693, *6 (S.D. Ill. Sept. 11, 2014) (holding that nurse being aware that the plaintiff had a bloody nose was not enough to put her on notice of any serious medical condition); *Cirilla v. Kankakee County Jail*, 438 F.Supp.2d 937, 944 (C.D. Ill. 2006). Moreover, there are no allegations that show Creasy or Nurse Cook believed any serious harm existed because of his bloody nose. *Boyce v. Moore*, 314 F.3d 884, 890 (7th Cir. 2002) (holding that if officials are aware of only minor symptoms the plaintiff is not entitled to relief). Because the allegations show Scruggs suffered from nothing more than a simple bloody nose, there can be no constitutional claim for deliberate indifference of a serious medical need. In addition, as a non-medical staff member, Creasy was entitled to defer to the judgment of Nurse Cook regarding Scruggs' care. *See Hayes v. Snyder*, 546 F.3d 516, 526 (7th Cir. 2008).

Next, Scruggs alleges in his motion for preliminary injunction that Miller has "threatened his food supply." (DE 3 at 1.) The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). Inmates are entitled to adequate food, clothing, shelter, and medical care. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). However, "the Constitution does not mandate comfortable prisons," and conditions that may seem "restrictive" or "even harsh" are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981). As a result of this unspecified threat, Scruggs claims that he has not eaten on the days Miller works, which has been 12 days, equaling 36 meals, since November 23, 2015.

Here, it is not plausible to infer that Scruggs is being denied Constitutionally adequate

food. Scruggs does not allege that Miller or anyone else is depriving him of receiving food. Nor does Scruggs allege Miller has actually tampered with his food. Instead, Scruggs refuses to eat based on Miller's unspecified threats. To that end, Scruggs does not explain how Miller has threatened his food or why those threats have made him decide not to eat. Moreover, though Scruggs claims to have missed numerous meals over the past three months, he has failed to explain how these missed meals have caused him any injuries. Without more, as pled these allegations fail to state a plausible claim. However, to be clear, this is not necessarily the end of the road for the claim. Scruggs has the opportunity to seek leave to file an amended complaint and clarify or elaborate on the claim if he believes that doing so would address the above noted deficiencies.

Next, Scruggs complains in his motion for preliminary injunction about Miller and SinClair's verbal harassment. He claims they call him "nigger," tell him they "want him dead," tell him "they will have the KKK go see his family" and have also said they will put his children's "photographs on a child porn web site." (DE 3 at 1, 2.) Typically, verbal harassment does not trigger constitutional protections. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("[S]imple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). However, verbal abuse can constitute cruel and unusual punishment under the Eighth Amendment in limited situations. *Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015). In *Beal*, the guard called an inmate terms like "punk, fag, sissy and queer," in the presence of other inmates thereby "increas[ing] the likelihood of sexual assaults on him." *Id.* at 358. Because the harassment "may have made him a pariah to his fellow inmates and inflicted significant

psychological harm on him," the court found that the harassment was actionable. *Id.* at 359.

Here, the alleged comments by Miller and SinClair - while certainly deplorable - have neither harmed nor increased the risk of any future harm to Scruggs. There are no allegations that the defendants took any action in furtherance of any of the alleged verbal harassment. Nor is there any indication that these comments caused Scruggs to suffer any psychological harm. For these reasons, the statements do not plausibly give rise to a constitutional claim. *DeWalt*, 224 F.3d at 612. While the current allegations amount to no more than verbal harassment, Scruggs may be able to state a claim. Again, Scruggs has the opportunity to seek leave to file an amended complaint and clarify or elaborate on his claims if he believes that doing so would address the above noted deficiencies.

II.     Preliminary Injunctions

The court turns then to the two motions for a preliminary injunction. In the first, Scruggs complains that Miller, SinClair and Creasy have been threatening and harassing him because he threw water on Sternberg in November 2015. (DE 3.) He requests an immediate no contact order requiring the prison to have those officers work in another section of the prison. (DE 3 at 2.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, the moving party must demonstrate that he or she has a reasonable likelihood of success on the merits, lacks an adequate remedy at law, and will suffer irreparable harm if immediate relief is not granted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

Finally, the court must consider the interest of the public and non-parties in denying or granting the injunction. *Ty Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

Scruggs has not met these requirements. To start, he has not shown a likelihood of success on the merits. While his motion asks for a preliminary injunction based on various alleged threats and harassment, this case is about money damages for three past incidents of alleged uses of excessive force. And, while he has made those allegations, he has not supported them with anything but his own statements. While his allegations are enough to get beyond screening, they are not enough to show a reasonable likelihood of success on the merits. Scruggs has also not established that he does not have an adequate remedy at law. Tellingly, in his complaint, Scruggs seeks only money damages; he does not even seek a permanent injunction in this case. (See DE 2 at 5.) Thus, even if he were successful in this case, he would receive only money damages for being wrongfully pepper sprayed.

Additionally, when a prisoner seeks injunctive relief against correctional officials the last factor, public interest, takes on particular importance. Under the Prison Litigation Reform Act, injunctive relief must be "narrowly drawn, extend no further than necessary to remedy the constitutional violation, and must use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012). As the U.S. Supreme Court has observed, "the problems of prisons in America are complex and intractable," and "courts are particularly ill equipped to deal with these problems[.]" *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (internal quote marks and citation omitted). Accordingly, courts must afford prison officials "wide-ranging deference" in the day-to-day operations of a correctional facility. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Here, public policy weighs against granting an injunction. What Scruggs wants - an order that prison staff stay away and not harass him in various ways - would require constant monitoring by the court and involve the court in every instance of discipline, denial of privileges or assignment of officers. Getting involved in this matter is the type of day-to-day operations the court tries to avoid. Such decisions are better left to the correctional facility's deference. Thus, the court will deny this motion at this juncture. Surely, if Scruggs files an amended complaint, the decision of whether or not to grant injunctive relief can be revisited. For now, the Superintendent will be provided with a copy of this order so that he is aware of these issues and this litigation so he can best decide how to proceed.

Scruggs' second motion for preliminary injunction requests an order to preserve:

1. Video from WCU-B8-203 on 11-15-15, 11-21-15 and 11-22-15 from 6 a.m. through 6 p.m., and any cell extraction video from 11-22-15;

2. Video from WCU-B8-203 on 12-1-15 from 6 a.m. through 6 p.m., and any cell extraction video from 12-1-15;

3. Video from WCU-A4-201 on 1-2-16 and 1-3-16 from 6 a.m. through 6 p.m., and any cell extraction video from 1-3-16; and

4. Video from WCU-B1-107 on 1-4-16 to 1-12-16, all 24 hours a day;

so that he can use the video as evidence in this case. Although labeled as a preliminary injunction, this request is more appropriately understood as a motion to preserve evidence, which is unnecessary. Previously, he has sought to preserve the same video evidence and has been told the same thing. (*See Scruggs v. SinClair*, Cause No. 3:16-CV-39, DE 10.)

Again, a party has a duty to preserve evidence when he knows, or should have known, that litigation is imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). The duty to preserve evidence encompasses any evidence that the non-preserving party

knew or reasonably could foresee would be relevant to the action. *Larson v. Bank One Corp.*, 2005 WL 4652509, *10-11 (N.D. Ill. August 18, 2005); *Danis v. USN Communications, Inc.*, 2000 WL 1694325, *32 (N.D. Ill. Oct. 20, 2000). This duty attaches when the defendant is put on notice of impending litigation. *Motel 6*, 534 F.3d at 681 (explaining that Motel 6 was on notices of the claim when it received the plaintiff's demand letter). Because the defendants have not yet been served in this case, the court will provide the prison Superintendent with a copy of this order to trigger the duty to preserve evidence.

For these reasons, the court:

(1) **DENIES** the motions for a preliminary injunction (DE 3, 4);

(2) **DIRECTS** the clerk to send a copy of Scruggs' motions (DE 3, 4) along with a copy of this order to the Superintendent of the Westville Correctional Facility;

(3) **GRANTS** the plaintiff leave to proceed on a claim against Stg. Miller, Stg. SinClair and Lt. Creasy in their individual capacities for monetary damages for using excessive force against him on two occasions on November 23, 2015 and one occasion on an unspecified date;

(4) **DISMISSES** all other claims;

(5) **DISMISSES** Nurse Cook and C.O. Sternberg;

(6) **DIRECTS** the clerk to transmit the summons and USM-285 for Stg. Miller, Stg. SinClair and Lt. Creasy to the United States Marshals Service along with a copy of the complaint (DE 2) and this order;

(7) **DIRECTS** the U.S. Marshals Service to effect service of process on Stg. Miller, Stg. SinClair and Lt. Creasy pursuant to 28 U.S.C. § 1915(d); and

(8) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Stg. Miller, Stg. SinClair and Lt.

Creasy respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: February 8, 2016

                                              /s/ JON E. DEGUILIO
                                              Judge
                                              United States District Court